Case number 24-7030, Amaplat Mauritius Ltd. v. Zimbabwe Mining Development Corporation, et al., balance. Mr. Smoot for the balance, Mr. Davidson for the FOEs. Council, before you begin, let me just announce we have three cases on our docket. This morning we'll hear the first two in open court as we normally do. For the third case, we will begin in open court and then have a private session with the parties. Mr. Smith, whenever you're ready. Thank you, Mr. Court. Since 2021, no less than 11 judges in this circuit have looked at the argument as to whether the New York Convention provides an implied waiver of foreign sovereign immunity. And those judges have refused to find an implied waiver. Now today is this court's chance to rule directly on the matter because Amaplat, and I will call it only Amaplat, the appellees, can only avoid reversal by convincing you that there is an implied waiver in the New York Convention. And it cannot do so for at least five reasons. The first is that the New York Convention textually has no implied waiver. It is merely a convention that sets up a framework for the recognition of arbitral awards should they come to exist in the future. There is no consent to arbitration at all. And there is certainly no mention of judgments, which is what Amaplat is bringing to you, merely a judgment. There's a formula from sea transport. Yes, sir. Created in sea transport. Yes, sir. And embraced in Creighton. Maybe in dicta, maybe not. But the formula is that when a foreign sovereign both signs the New York Convention and also agrees to arbitrate a dispute within a signatory country, that's enough to waive. Yes. What's wrong with that? Well, I mean, I think there's a few problems that are wrong with it. First, that doesn't get to judgments. So even in the best case scenario. Yeah. Let's just start on sea transport has two parts. Let's start on the first. The first one. What's wrong? Well, because the convention itself is not consent to arbitration. So a state can enter into the contracting party to the convention and never arbitrate. So there is not necessarily an expectation that there would be this award that would have to be in the formulation is one plus two. Correct. And so I think that that's that's the first part of it, is that you have to have this consent arbitration, which you don't have. And so that kills the expectation that is inherent in sea transport. This notion that states should have somehow viewed it into the future. And then I think that whenever we break it down into this case, it gets even more difficult because they're trying to bind Zimbabwe. Right. It didn't sign the arbitration agreement. So even so, even less so put aside attribution for now. Just trying to get my arms around sea transport. Sure. Sure. I think that the that the clearest way to look at sea transport is really the way that the United States have put it in their amicus and next era, which is that there has to be a consent arbitration. Right. And there just isn't one in the context of the New York Convention. And I think that that that sort of ends the entire analysis as it relates to to sea transport. You consent. Yes, sir. Arbitrate. Yes, sir. In a jurisdiction that's signed the New York Convention. And sovereigns are not unsophisticated litigants. They know the background law. The background law is that awards in New York Convention countries, signatory countries can be enforced in other signatory countries. Yeah. And that's why we look at the contract. Right. So is there actually consent to arbitration? Because there it's not there in the convention. Right. You have to have the contract or in some cases, the treaty. And I know that in sort of a rigid dissent in in Zongshan. So I don't want to get into all the components of a treaty, but there has to be some kind of an agreement. I mean, I've spent a lot of time thinking about that dissent. But one key difference on my view is Zongshan. What was what cut against enforcement was that case was predicated on sovereign acts. Correct. This one is predicated on commercial acts. So if if all we're talking about is the commercial acts of a foreign instrumentality. I mean, the background presumption going all the way back to the back to the early 1950s is that there's there's no immunity. There's no sovereign immunity. Well, well, sir, I would say back to the 1950s, I'm I'm not so sure. Right. And even after the Tate letter, it's it is, I think, a bit unclear. And I don't think we really get to a greater level of clarity in 1970. And by the time of just by the time this dispute arose. Correct. Yeah. So I think but I think the reason I'm going back to that is just to show how there really isn't this kind of overwhelming consensus and historical context into which we can put the New York Convention to find an implied waiver. Right. And I think that's why whenever you look at the FAA or the FAA, the Foreign Sovereign Immunities Act, you have the implied waiver and the arbitration exception because there are two things to two provisions doing two different things. One is whenever you have the contract with the consent and the other is for the three categories that this circuit has found in the context of Kaczynski and the later cases of when an implied waiver exists. And so that's that's really why we go back to the actual existence of the contract or the agreement. And whether it's commercial or not, there's still it still has to has to be there. The New York Convention doesn't have it. So that's why there's no way we can get to the sea transport formulation of how there should be an implied waiver. OK. We agree with that. Essentially, the sovereign doesn't waive his immunity by signing on to the New York Convention. We have to take it a step further in ruling also whether the sovereign waives his immunity as to the foreign arbitral award confirmation agreements or their actions in that regard. Well, I think that what you would do is that then you would go to the FSIA and you would say, well, is this an application to confirm an award? And then that would be 1605A6. Right. And I think that that's actually consistent with Zongshan as well, where this court did find that the FSIA's arbitration exception, not the convention, strips states of their immunity. Right. And there wasn't really a debate on that on that point. So that's where we would go. Right. Is there an application to confirm? And there isn't. There's an application to recognize a judgment. And if there is an to confirm, then we have to go to and see, well, then let's take chapter two, because chapter two of the FSA incorporates the New York Convention and chapter two deals with awards. It has a three year time limit to enforce awards. And so to us, it is incongruous to say, well, I'm going to grab the convention for some things, but I'm going to grab D.C. Judgment Enforcement Act for other things. And it's so quite convenient that on all of the points that they need to win, they're going to grab just the arbitration part and the other points are going to go to the D.C. law. Yes, ma'am. And you make a good point because the good point because the case is brought under the D.C. Judgments Act. Yes, ma'am. One counts. So we need to be focused on the word judgment here. Yes, ma'am. For purposes of that, rather you confirm an award earlier or try to enforce a word earlier. Right now, we're here on recognition and enforcement of a judgment. Yes, ma'am. That's absolutely correct. OK. And I was just going to move on to the arbitration exception. Then you appear to believe that it's not properly before us on appeal. But could we also use that as an alternative ground to whether or not there is a waiver there? Well, I mean, you could. I mean, if you wanted to analyze it right. I mean, you of course, you've seen our award. I mean, textually, and I think the district court got this 100 percent right. The conformant award, you're saying the arbitration provision is only used for that. Correct. And because the FSA says if you want to come confirm an award, then here's your exception. Right. And it uses from an award. Right. It's pretty. It's pretty clear language. And so we don't even see the need to go to larger circle context. But if we were to go to the context, then we would see that, you know, our immunity exists unless there's an exception. And so we shouldn't go about adding words to exceptions whenever the text is on its plain meaning, quite straightforward. So that's why we don't need to get to the other arguments that would be out there. And this notion that we should add about the award to the to the text to somehow prop up judgment enforcement. And you see that between the arbitration exception and the implied waiver exception that we would need to address? Not in this case. I mean, I could maybe see hypothetical cases in the future, but I think on on these facts, it's just it's just not there. And that's why the arbitration exception exists. Right. It's to have a clear path for arbitrations. And then that's why you have the three categories in this circuit for implied waiver because it's for other things entirely. And so we don't see a need to get to it in this case. And in thinking about an opinion and going your way by saying that these exceptions do not apply, then we would not need to reach out to EGLE? No, we would not. OK. I mean, that would that would in the case. And I think even if on their on their best case scenario, I mean, she'll disagree with me, but I think that also reading their arguments in the case as well. Right. Because there has to be an exception to immunity. And if there's not. There is nothing to discuss. Yes, sir. Second, I ask you about the first part of seat transport. Let's talk about the second. The Second Circuit's rationale is that. An action to enforce a foreign judgment that confirms a foreign arbitral award is a lot like a direct action here to confirm the award. What's wrong? Yeah. First off, I think that the Second Circuit didn't really get into it very deeply. I think there's a lot of problems in the D.C. Circuit. Sorry. No, I just there's no serious textual analysis. But I guess I'm wondering what text we should be looking to, because all of this is just. The springboard for all of this is implied waiver and who knows what that means? Well, but we kind of do. I mean, there are the three categories that the circuit has laid out and reinforced multiple times. So, I mean, I think it's on on Amiplat to tell you there's a new fourth category. Right. And then whenever we go to this, the reasoning that you see in Second Circuit, there's a lot of problems because, you know, the this circuit has said in common pecs, there's two different things. There is enforcing judgments and there's enforcing awards. Right. And so to get to back to the Second Circuit, you have to say, well, no, actually, they're kind of the same. And to me, it's sort of like a Schrodinger's cat. Right. We're going to put this thing in a box. Maybe it's an award. Maybe it's a judgment. We don't know. Could be both. Could be neither. And then pull it out later whenever we want to enforce it. And I don't think that that is really consistent with how the circuit has decided or I think really does justice to what the Second Circuit has as reasoned. Sir, I've reserved two minutes. I don't want to go, but I would love to answer questions. So any questions, please. Jed. Okay, we'll give you your rebuttal time. Thank you. Thank you, sir. Good morning. May it please the court. Stephen Davidson on behalf of the plaintiffs below and appellees. Your honors, in our view, defendants waive their sovereign immunity in two ways by implication under the a one implicit waiver and by the arbitration exception of a six. The court can proceed under either exception to affirm the trial court's judgment and find that subject matter jurisdiction exists over ZMDC and the commissioner based on their agreement and participation in the arbitration in Zambia, a New York convention signatory, and over Zimbabwe as the alter ego. I don't see how you're even close on arbitration. This is this is not an action to confirm an award. It's an action to recognize a judgment and just usage in this context. Arbitral awards are one thing. Foreign judgments are another. Well, one's governed by federal law. One's governed by state law. One's a contract. One's an active foreign sovereign, and you're going to collapse those two. Well, I believe that the waiver exception is the one best founded here, and we're seeking under the arbitration exception should the court not take up that issue as it has declined to do in next era and others. But like you seems to suggest, your honor, I think this case squarely fits under sea transport and under the A1 implied exception. The critical principle here is when a sovereign agrees to binding arbitration in a country that is party to a treaty that allows national courts to confirm arbitral awards, the contracting states agrees the award will be an enforceable judgment and the sovereign is waived its immunity. We think sea transport is properly decided and your discussion of it in Creighton and Patnaff and also in process and industrial development. I'd also, your honor, say that Cominpex is also a similar case in that, remember, that was an A1 case. That was a waiver, and the court didn't need to discuss the waiver because it was an explicit waiver, but we're in the same section of the FSIA, and we would say Cominpex is just like us, except we're saying an implicit waiver rather than an explicit waiver. So we've also in this circuit indicated that you need strong evidence of the sovereign intending to waive its immunity, and so what would be your strong evidence? The strong evidence, I'm sorry, I'm sorry, the strong evidence would be agreeing to the New York Convention and, most importantly, agreeing to arbitrate and participating in an arbitration in a New York Convention state. By doing that, the sovereign has impliedly waived its sovereign immunity to enforcement under the New York Convention. So what's the basis of the waiver? And then the second question is, what's the tool we're using here to enforce? So as to the first question, and in response to your honor's question, the basis of the waiver is agreeing to the New York Convention, agreeing to binding and final arbitration in a contracting state. That's the basis of the waiver. And then we have a procedural question, second question, of what's our methodology of enforcement? And here, as your honor has pointed out, it's under the Uniform Act, D.C.'s version of the Uniform Act, to turn the Zambian judgment into a judgment of this court. And we believe that falls squarely within what Cominpex did, finding a waiver under A1 and then allowing an enforcement under the Uniform Act, not the FAA, which has, as you know, a three-year statute of limitations. The Uniform Act has a 15-year statute of limitations, so we're well within that, and that allows us to proceed here. And to the extent the court is troubled by the U.S. position in different filings here, most recently in Next Era, I don't know if it's fair to say from these briefs the U.S. has taken a position that it shouldn't apply, that is, that A1 shouldn't apply. They invited the court to decide Next Era and other cases on the arbitration waiver, which... But Next Era was to confirm an award. Correct. Correct. And I guess my point of these types of questions are that there seems to be distinctions in utilizing the terms confirm and award versus recognizing and enforcing a judgment. Those terms are different. I agree, but I don't think that that goes to the question of whether there's been a waiver, because the waiver question is taken separately from the procedural mechanism that we've employed here. And of course, we're using this mechanism because it's more than three years beyond when the arbitral award was entered. So we could not confirm the arbitral award under the New York Convention because the statute of limitations has expired, just like in Cominpex, just like in C-Transport. And we think this case falls under those. But I'm going to push you one more case. We have Commissioner's Import versus Republic of the Condos 757 F321 D.C. Circuit 2014, which indicates that recognizing a foreign judgment is distinct from an action to enforce an arbitral award. So at least this circuit seems to... That's the Cominpex case, the Congo case. But I believe, Your Honor, that case actually supports our position here. Because remember what was happening in Cominpex. First, they had to find a waiver, and then they had to find a procedural mechanism. That case is an A-1 waiver case. And the difference in between those two cases, it was an explicit waiver. But whether it's explicit or implicit, it's the same under A-1. So this court allowed a creditor, just like in this situation, who had a foreign arbitral award beyond the three-year statute of limitations of the FAA, and allowed confirmation, recognition, and enforcement of the judgment here because they found that the sovereign had waived its immunity. We rejected an argument that the statute of limitations governing the Confirmation Act, the FAA Confirmation Action, carries over to the uniform judgment recognition. Right. And I'm not trying... We can separately address... No, no, no. And I'm not suggesting... I'm sorry, Your Honor. No, I mean... I'm not suggesting the court did that. I'm just saying that our case is the same. The court didn't need to go through a detailed discussion of the waiver. We didn't decide... No, no, no. ...on your question. Understood. I'm just saying that it... So we're left a little bit with kind of a mood and a vibe of that case. And part of it is helpful to you. I write presumption against preemption. You can go on parallel tracks. Right. But part of it is harmful to you. I mean, the rationale was, as Judge Childs has been suggesting, actions to recognize awards, confirm awards, are just different from actions to domesticate judgments. I understand that. And I think that using that logic, it would be unhelpful to our A-6 argument. But I think it is not unhelpful to our A-1 argument. Because in Cominpex, like in this case, the court had to find a waiver. I think there's two distinct questions here. The court allowed a creditor, just like us, to enforce a foreign judgment that had recognized an arbitral award. And I don't think there's any question, based on Cominpex, Cease Transport, and others, that you can do that. The question is, have you proved subject matter jurisdiction by virtue of a waiver of sovereign immunity? And here, we are saying that the basis of that waiver comes from the agreement to join the New York Convention and arbitrate filing binding in a convention state. And if you take the U.S. brief in NextEra, I think we can actually use it to our advantage. Because what the U.S. was concerned with there, and in prior amici, was that it did not believe simply signing on to a convention amounted to enough evidence to show the sovereign had waived its immunity. But in that brief, the United States suggests, however, if you have that, plus an agreement to arbitrate, that could be sufficient. You need both steps. Right. Which we have here. Let's just drill down on that a little bit. One part of Creighton says that an agreement to arbitrate in a jurisdiction that has signed the New York Convention is insufficient to support an implied waiver, right? I would think as between that, the agreement to arbitrate in a New York Convention jurisdiction, that's a much stronger argument for a waiver than simply signing the New York Convention. Signing the New York Convention doesn't commit the state to arbitrate anything. So if it's not enough for the state to specifically commit themselves to arbitrate in a jurisdiction that has signed the New York Convention and the state knows enforcement law and how the New York Convention works, that's not enough. Then how does it become enough when they then sign the New York Convention? Well, it becomes enough when they sign the convention and agree to arbitrate in a New York Convention state and agree to final and binding arbitration. It seems like signing the New York Convention by itself has nothing to do with anything, and the U.S. explains that in its brief. I mean, by signing the convention, the signatories have agreed to allow the enforcement of an arbitral award in their jurisdiction. I mean, that's what Article 5 says of the New York Convention. So I take the point of your honor and what the United States says, but I don't need to fight that fight because here we have that plus the arbitration. So to us, in this case, that's a bit of a theoretical question. And also, your honor, let's take through if we're wrong and A1 doesn't apply to this situation, that has significant other effects, which we believe shows that... So before you go to A6... Actually, I'm still on A1. Okay, all right. I'm just saying that if A1 doesn't apply and assuming A6 doesn't apply, so our only avenue is A1, that would also eliminate state-to-state arbitrations from the waiver of A6. Because A6, the arbitrations have to be between private parties. So I don't think when the amendment adding A6 was added in 88, they meant to eliminate the state-to-state arbitrations could be covered. And also, if you think literally... I'm sorry. Now, the point of that... The point of that is... The point of that is to say that the particulars of A6 shouldn't be invoked to narrow what would otherwise be the scope of A1. Correct. That's a much more coherent way of saying... Which just brings us back to the scope of A1 and... I mean, again, we've talked about the first part of seat transport. Right. And I think... Let's talk about the second. Even if these two steps, signing the convention and agreeing to arbitrate a dispute, even if that gets you exposure to actions to confirm awards, the New York Convention is all about that. It's not about enforcement of judgments. Right. But again, all of our discussion goes to whether there's subject matter jurisdiction. The convention and... The whole rationale of that second part of seat transport is that the action to domesticate the foreign judgment is closely related to a different action to confirm an award. That sort of made sense to establish pendent jurisdiction. I don't know why it makes sense to establish a waiver of immunity. Well, again, the waiver of immunity comes from what the sovereign did. And then... And what the sovereign did under the New York Convention was create exposure to actions to confirm awards. And the second... To recognize and enforce within the treaty language. Right. And also, then by agreeing to arbitrate in the convention state, they've exposed themselves to confirmation of that award, which the FSIA doesn't speak and the New York Convention don't speak to particular ways of doing that. And that... And you in Commonpex endorsed using the Uniform Judgment Recognition Act to accomplish that. Anything? Judge Edwards? Thank you. Thank you. Your Honor, if I could just address briefly kind of one case, and that's the argument on Commonpex. We heard that the waiver is from the procedural mechanism. And the procedural mechanism is the D.C. Judgment Enforcement Act. So to me, the argument on Commonpex, it just runs into itself. Because if it has to come from the Judgment Enforcement Act, that's not where we are. Right. We also heard that there was an express waiver in Commonpex, but it's just the same as our case. An express waiver is dramatically different from an implied waiver. Right. And if you see in Commonpex, what had happened is that the state had actually signed a separate waiver. I mean, these cases are quite different. And then we heard a little bit about state-to-state arbitration. I don't totally follow the argument, but that is an utterly different animal. That's the ICJ. Those are obligations between states. And that has nothing to do with awards to enforce monetary amounts in convention states. I don't even think the convention wants to get to that. I mean, we're talking about a boundary dispute, whether to award some sort of compensation under a separate total regime. I think the state-to-state arbitration is really a red herring. And then finally, we heard about the amicus from the U.S. I just want to touch on it. The U.S. says the conventions, I'm quoting, by themselves do not commit a foreign state to engage in arbitration. And therefore, they could not implicitly waive sovereign immunity for any enforcement action. I mean, that's the text. I think it's quite broad and convincing. So if there are no further questions, then I will sit down. And thank you for your time and your excellent questions. Thank you, counsel. The case is submitted.
judges: Katsas; Childs; Edwards